[Cite as *State v. Butler*, 2012-Ohio-5030.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-7 |
| JOEL L. BUTLER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal appeal from the Holmes County
Court of Common Pleas, Case
No.11CR078

JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      October 19, 2012

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

STEVE KNOWLING                  DAVID HUNTER
Prosecuting Attorney                 244 West Main Street
SEAN M. WARNER                  Loudonville, OH 44842
Assistant Prosecuting Attorney
164 E. Jackson Street
Millersburg, OH 44654

*Gwin, P.J.*

{¶1} Appellant Joel L. Butler ["Butler"] appeals from the March 13, 2012 and March 19, 2012 entries of the Holmes County Court of Common Pleas Court convicting and sentencing him after a jury trial on one count of Domestic Violence and one count of Disrupting Public Service. The plaintiff-appellee is the State of Ohio.

Facts and Procedural History

{¶2} Butler and his wife, Elizabeth, have been married for 24 years. On July 12, 2011, Elizabeth arrived home from work and an argument ensued between the two over divorce papers. Elizabeth went into the bedroom and called the Sheriff's Office for a "civil standby." Elizabeth testified that Butler had come into the bedroom and surmised that she had called the police. Butler then left the bedroom; however, he returned, pulled out a kitchen knife from his back pocket, raised it over his shoulder and proceeded toward Elizabeth. Elizabeth tried dialing 911 with her cell phone. Butler "grabbed the phone, twisted it back and he snapped it on the bed, threw it up against the bed and said [Elizabeth] wasn't fuckin' callin' anyone." Although there was a landline telephone and another cell phone on the premises, Elizabeth was unable to reach either of them during Butler's attack.

{¶3} After breaking his wife's phone, Butler "brought the knife down..." and "sliced down through the middle finger, index and pinkie" of Elizabeth when she attempted to block the knife. She testified, "It wasn't real deep but it did cut me." She further testified that Butler came behind her and the two of them fell to the floor and Butler tried to cut Elizabeth's throat but she held his hand and was pushing it away.

**{¶4}** Butler released Elizabeth; however, he made her call the Sheriff's Department to cancel her request for a civil standby. Sergeant Wade Johnson of the Holmes County Sheriff's office arrived a few minutes later as Elizabeth was loading boxes in her car. Sergeant Johnson testified that Elizabeth was "crying, upset, almost hysterical." Sergeant Johnson noticed the injuries to Elizabeth's hand shortly after arriving.

**{¶5}** When Sergeant Johnson approached Butler, he admitted that he had broken the phone in half because he and Elizabeth were arguing. Butler claimed no knife was involved in the altercation. Sergeant Johnson photographed the knife identified by Elizabeth as the one used by Butler during the altercation. He also photographed her injuries and the broken cell phone. The photographs were admitted in to evidence. The knife was lost before trial.

**{¶6}** Butler was charged in a three-count indictment with Domestic Violence in violation of R.C. 2919.25(A); Disrupting Public Service in violation of R.C. 2909.04(A)(1); and Felonious Assault in violation of R.C. 2903.11(A)(2).

**{¶7}** Butler did not testify or present evidence on his own behalf during the trial.

**{¶8}** After instruction by the Court and deliberation, the jury returned verdicts of guilty of Domestic Violence, guilty of Disrupting Public Service, and not guilty of Felonious Assault.

ASSIGNMENTS OF ERROR

**{¶9}** Butler raises five assignments of error,

**{¶10}** "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS UNDER CRIM. R. 29(A) AT THE CLOSE OF THE STATE'S CASE-IN-

CHIEF BECAUSE THE PROSECUTION FAILED TO PROVE ITS CASE WITH COMPETENT, CREDIBLE EVIDENCE.

**{¶11}** "II. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS UNDER CRIM. R. 29(A) AT THE CLOSE OF THE EVIDENCE BECAUSE THE PROSECUTION FAILED TO PROVE ITS CASE WITH COMPETENT, CREDIBLE EVIDENCE.

**{¶12}** "III. THE JUDGMENT OF CONVICTION FOR DOMESTIC VIOLENCE AS ALLEGED IN COUNT ONE OF THE INDICTMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶13}** "IV. THE JUDGMENT OF CONVICTION FOR DISRUPTING PUBLIC SERVICE IN COUNT TWO OF THE INDICTMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶14}** "V. THE DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE EVIDENCE OF A PRIOR CONVICTION WAS TESTIFIED TO AND ARGUED BY THE STATE WITHOUT OBJECTION BY DEFENSE COUNSEL."

## I., II. III. & IV.

**{¶15}** Because Butler's first, second, third and fourth assignments of error each require us to review the evidence, we shall address the assignments collectively.

**{¶16}** In his first and second assignments of error, Butler alleges that the trial court erred in not granting his Crim. R. 29 motion for acquittal.

**{¶17}** In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the

evidence. *See, e.g., State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 974(1995); *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492(1991).

**{¶18}** In his third and fourth assignments of error, Butler maintains that his conviction is against the sufficiency of the evidence and against the manifest weight of the evidence, respectively.

**{¶19}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S.120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶20}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but

depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶21}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

{¶22} *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶23} To find Butler guilty of Domestic Violence the trier of fact would have to find that Butler knowingly caused or attempt to cause physical harm to a family or household member. R.C. 2919.25(A). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A) (3).

{¶24} R.C. 2901.22 defines "knowingly" as follows:

(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶25} "Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff*, 145 Ohio App. 3d 555, 563, 763 N.E.2d 695(2001). (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel,* 2nd Dist. No. 16221, 1998 WL 214606 (May 1, 1998), *citing State v. Elliott*, 104 Ohio App.3d 812, 663 N.E.2d 412(1995).

{¶26} R.C. 2923.02(A) provides a definition of attempt, "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the

commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

**{¶27}** The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059(1976), paragraph one of the syllabus, *overruled in part by State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140(1977); See also, *State v. Ashbrook*, 5th Dist. No.2004-CA-00109, 2005-Ohio-740, *reversed on other grounds and remanded for re-sentencing pursuant to State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, *In re: Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109.

**{¶28}** In defining a substantial step, the *Woods* Court indicated that the act need not be the last proximate act prior to the commission of the offense. *Woods* at 131-32, 357 N.E.2d 1059. However, the act "must be strongly corroborative of the actor's criminal purpose." Id. at paragraph one of the syllabus. This test "properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent." *Woods, supra* at 132, 357 N.E.2d at 1063. In other words, a substantive crime would have been committed had it not been interrupted. Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case. *State v. Group*, 98 Ohio St.3d 248, 262, 2002-Ohio-7247, 781 N.E.2d 980(2002), ¶100.

**{¶29}** Butler does not dispute that Elizabeth was a ""family or household member." Further, Elizabeth and Sergeant Johnson each testified to the injuries visible on Elizabeth after the incident. Photographs of the injuries were submitted to the jury.

**{¶30}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Butler had committed the crime of Domestic Violence.

**{¶31}** We hold, therefore, that the state met its burden of production regarding each element of the crime of Domestic Violence and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Butler's conviction.

**{¶32}** To find Butler guilty of Disrupting Public Service as charged in the indictment the trier of fact would have to find (1) conduct that interrupted or impaired (2) public service communications. The statute unambiguously specifies that in order for one to disrupt public services under R.C. 2909.04(A)(3), the conduct involved must be the knowing damaging of or tampering with any property. *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, 919 N.E.2d 190, ¶23.

**{¶33}** The word "property" is defined in R.C. 2901.01(A)(10)(a) as follows:

'Property' means any property, real or personal, tangible or intangible, and any interest or license in that property. 'Property' includes, but is not limited to * * * telecommunications devices * * *.

**{¶34}** R.C. 2901.01(A)(10)(c) provides that the term "telecommunications device," as it is used in division (A)(10), has the same meaning as in R.C. 2913.01.

"Telecommunications device" is defined in R.C. 2913.01(Y) as:

[A]ny instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer, computer network, computer chip, computer circuit, scanner, telephone, cellular telephone, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem.

(Emphasis added.)

**{¶35}** In *Robinson*, the Supreme Court noted that the reference to "damaging or tampering with any property" in R.C. 2909.04(A) includes property such as a private telephone or a mobile telephone. 124 Ohio St.3d 76, 2009-Ohio-5937, 919 N.E.2d 190, ¶ 29. Once it is determined that a defendant damaged or tampered with a victim's telephone, the next consideration is whether that act "substantially impairs the ability of law-enforcement officers, firefighters, rescue personnel, emergency-medical-services personnel, or emergency facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm" in order to constitute a violation of R.C. 2909.04(A)(3). Id. at ¶ 32, 919 N.E. 2d 190.

**{¶36}** In *Robinson,* as in the case at bar, the defendant smashed the victim's telephone, destroying it. Id. at ¶ 8, 919 N.E. 2d 190. In *Robinson,* the victim was already in contact with 9-1-1 when Robinson destroyed the victim's mobile telephone, rendering the victim unable to provide complete information to the police. *Id.* at ¶ 7-8, 38, 919 N.E. 2d 190. However, the police were able to locate the scene from the information the victim had provided, as well as from a second telephone call from another party about their general whereabouts. *Id.* at ¶ 9-10, 39.

**{¶37}** The facts in the case at bar demonstrate "substantial interference." Here Elizabeth was attempting to dial 9-1-1 at the time Butler grabbed the telephone away and smashed it. In the case of a suspected assault, it is important for emergency personnel to reach the victim immediately to prevent further harm to the victim. During the period following the destruction of the telephone, Elizabeth was assaulted with a knife. Butler further forced Elizabeth to call and cancel her request for a "civil stand by."

**{¶38}** In *State v. Yoakum*, we held appellee is not required to prove that an actual 9-1-1 emergency call was in progress when the telephone was disabled by the defendant throwing it against the wall. 5th Dist. No. 01 CA005, 2002–Ohio–249, at *2, citing *State v. Brown*, 97 Ohio App.3d 293, 301, 646 N.E.2d 838 (8th Dist.1994).

**{¶39}** In short, the State established Butler committed the conduct prohibited by R.C. 2909.04(A)(1): he took the phone from Elizabeth, breaking it and preventing her from calling the police. Elizabeth was at least temporarily delayed in seeking emergency assistance. *Yoakum,* ¶20.

**{¶40}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Butler had committed the crime of Disrupting Public Service.

**{¶41}** We hold, therefore, that the State met its burden of production regarding each element of the crime of Disrupting Public Service and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Butler's conviction.

**{¶42}** To find Butler guilty of Felonious Assault the trier of fact would have to find that Butler knowingly caused serious physical harm or caused or attempted to cause physical harm by means of a deadly weapon.

{¶43} Serious physical harm to persons" as defined in R.C. 2901.01(A)(5) means any of the following in pertinent part:

{¶44} (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

{¶45} (b) Any physical harm that carries a substantial risk of death;

{¶46} (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity.

{¶47} "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon. R.C. 2923.11(A).

{¶48} "Physical harm to persons" means any injury, illness, or other physiological impairment, regardless of its gravity or duration. R.C. 2901.01(A)(3).

{¶49} A kitchen knife has been held to constitute a "deadly weapon." *State v. Brown,* 8th Dist. No. 87651, 2006-Ohio-6267, ¶42; *State v. Heath,* 2nd Dist. No. 19350, 2003-Ohio-1262, ¶27. In the case at bar, Sergeant Johnson photograph the knife Elizabeth showed him as having been used by Butler to cut her. (T. at 95-96). Sergeant Johnson testified the knife had a four-inch handle and an eight to ten inch blade. (Id. at 95).

{¶50} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Butler had committed the crime of Felonious Assault. A photograph of the knife was admitted into evidence. The knife itself was lost and therefore unavailable to utilize as an exhibit.

**{¶51}** We hold, therefore, that the state met its burden of production regarding each element of the crime of Felonious Assault and, accordingly, there was sufficient evidence to submit the charge to the jury. The jury found Butler not guilty of Felonious Assault.

**{¶52}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, quoting *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, citing *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125.

**{¶53}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. Accord, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752

(Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. No. 02AP-604, 2003- Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra*.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶54}** In *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by

the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false. *See Rice v. City of Cleveland,* 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶55}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury as the trier of fact was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The jury neither lost its way nor created a miscarriage of justice in convicting Butler of Domestic Violence and Disrupting Public Service.

**{¶56}** Butler's first, second, third and fourth assignments of error are overruled.

V.

**{¶57}** Butler's fifth assignment of error is that he was denied the effective assistance of counsel because trial counsel failed to object on two different occasions to reference to Butler's "prior Federal" conviction.

**{¶58}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of

reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶59}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet *both* the deficient performance and prejudice prongs of *Strickland* and *Bradley*. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

**{¶60}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In

making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland* 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{¶61}** In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{¶62}** An appellant must further demonstrate that he suffered prejudice from his counsel's performance. See *Strickland*, 466 U. S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

**{¶63}** Specifically, Butler cites the following exchange that occurred during his jury trial between the prosecutor and Elizabeth,

> Q:     And the mobile home that's in dispute, why is the title in your name?
>
> A:     Because of Joel's previous run ins with the law, with the Federal; his past history with [sic.]
>
> Q:     Was he found guilty of a Federal offense?
>
> A:     Yes he was.
>
> Q:     Was there a fine?
>
> A.     Yes there was.
>
> Q.     Okay um, so is there a Judgment in favor of the United States?
>
> A.     Yes.
>
> Q.     Okay and, and could the United States take a lien on titled property in Joel's name?
>
> A.     Yes.

T. at 154-155. During closing argument, the prosecutor remarked,

> If Elizabeth Butler, [sic.] she also testified that the title of the trailer is in her name as was the course of their marriage[sic.] to title all things in her name because of a prior conviction of Mr. Butler for a Federal offense with a judgment lien attached. Which means, the government would take a lien on anything that's titled in Joel Butler's name. That's what they've done prior to the how many years since his conviction.

T. at 168

**{¶64}** Butler claims that his trial counsel failed to object to the references to his "federal conviction" and that these references to prior criminal acts were prejudicial to him.

**{¶65}** "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136(1999), quoting *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988). We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." See *Smith v. Flesher*, 12 Ohio St. 2d 107, 233 N.E. 2d 137(1967); *State v. Stanton*, 15 Ohio St.2d 215, 217, 239 N.E.2d 92, 94(1968); *Wachovia Mtg. Corp. v Aleshire*, 5th Dist No.Licking App. No. 09 CA 4, 2009-Ohio-5097 at ¶16. See, also, App.R. 12(D).

Evid. R. 404 provides in part:

(A) Character evidence generally,

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:

* * *

(B) Other crimes, wrongs or acts.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes,

such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**{¶66}** Thus, Evid.R. 404 provides that character evidence is admissible for some limited purposes. In the case at bar, the evidence was admitted to rebut a claim by the defense that Elizabeth had a motive to fabricate her account of the altercation in order to obtain possession of the mobile home in the divorce proceedings.

**{¶67}** Further, where there is sufficient independent evidence of a defendant's guilt, which renders the admitted evidence harmless, there is no prejudice and reversal is unwarranted. *State v. Moritz*, 63 Ohio St.2d 150, 407 N.E.2d 1268(1980). (Citing *Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 1059(1972)); *State v. Stevenson*, 5th Dist. No. 2005-CA-00011, 2005-Ohio-5216 at ¶ 46.

**{¶68}** In light of the fact that the jury acquitted Butler of Felonious Assault and the overwhelming evidence of his guilt on the two remaining counts of the indictment, we find Butler has failed in his burden to demonstrate that the jury would have found him not guilty of the remaining charge had his attorney objected to the references and if the references had been excluded by the trial court.

**{¶69}** Butler's fifth assignment of error is overruled.

{¶70} For the foregoing reasons, the judgment of the Court of Common Pleas, of Holmes County, Ohio, is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JOHN W. WISE


WSG:clw 1004

[Cite as *State v. Butler*, 2012-Ohio-5030.]

IN THE COURT OF APPEALS FOR HOLMES COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JOEL L. BUTLER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012-CA-7 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, of Holmes County, Ohio, is affirmed.  Costs to appellant.


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JOHN W. WISE