[Cite as *State v. Yeargan*, 2017-Ohio-1325.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 16CAA060028 |
| SAMUEL YEARGAN | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Criminal appeal from the Delaware County Court of Common Pleas, Case No. 15CRI110525

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: April 7, 2017

APPEARANCES:

For Plaintiff-Appellee

CAROL O'BRIEN
MARK SLEEPER
Delaware County Prosecutor's Office
140 North Sandusky Street
Delaware, OH 43015

For Defendant-Appellant

DAVID BIRCH
286 South Liberty Street
Powell, OH 43065

*Gwin, J.*

{¶1}    Defendant Samuel A.M. Yeargan ["Yeargan"] appeals his convictions and sentences on four counts of Receiving Stolen Property after a jury trial in the Delaware County Court of Common Pleas.

*Facts and Procedural History*

{¶2}    Dr. William Wise and his wife, Dr. Elizabeth Brightman, live together at a house in Powell, Ohio.  On October 1, 2015, Dr. Brightman returned home around 3:00 pm and then contacted her husband.  Dr. Wise returned home and found that a number of items inside their home were not in the correct spot and others were missing. Doctors Wise and Brightman were scheduled to leave that day for a vacation.  Upon returning from their trip, they completed an inventory of all of the items that had been taken from their home.  Detective Charles Gannon of the Delaware County Sheriff's Office was assigned to the case.

{¶3}    Detective Gannon tried to locate the stolen property by searching through LEADS Online, a database of property sold to pawnshops in Ohio.  Detective Gannon began his search with a unique watch that had been stolen.  He received a hit that the watch had been sold by Yeargan.  By running Yeargan's name through LEADS Online, Detective Gannon learned that Yeargan had sold items on four different occasions to three different pawnshops during the period of October 1 through October 19.  Detective Gannon later met with the victims at the pawn shops to see if they could identify any of the property.

{¶4}    On October 2, 2015, Yeargan sold various jewelry to Lev's Pawn Shop on Parsons Avenue in Columbus.  One of the items sold to Lev's was a custom gold nugget

pendant with rubies and a diamond that had been commissioned by Dr. Wise for his wife. Dr. Wise testified that he paid $4,500 for the pendant. Yeargan was paid $620 for the items he sold on that date.

{¶5} On October 5, 2015, Yeargan sold jewelry including a Worthington High School class ring to Lev's Pawn Shop on Parsons Avenue in Columbus. Dr. Wise recognized that as his wife's high school class ring. Yeargan was paid $450 for the items he sold on that date.

{¶6} On October 6, 2015, Yeargan sold jewelry to Lev's Pawn Shop on East Main Street in Columbus. The most valuable item sold was a Patek Philippe watch. Dr. Wise identified that watch as something he had purchased for his wife for an anniversary or birthday. Dr. Wise said he paid $6,600 when he purchased the watch and that it was appraised at around $10,000 for insurance purposes. Yeargan was paid $1,500 for the items he sold on that date.

{¶7} On October 10, 2015, Yeargan sold jewelry to Luigi's Pawn Shop in Columbus. Included in that sale was a Duke University class ring engraved with the name William E. Wise. Dr. William Wise identified that as his class ring. Yeargan was paid $200 for the items he sold on that date.

{¶8} Officers conducted surveillance on Yeargan and eventually obtained a warrant for his arrest. He was arrested at his apartment. Yeargan residence was a one-bedroom apartment that had an air mattress, a futon, and no working electricity.

{¶9} At trial, Yeargan did not testify but called Jennifer Temple an employee at Second Chance Consignment and Fred Altevogt the owner of a large antique mall in German Village. Both witnesses testified about doing business buying or selling jewelry

with Yeargan. Finally, Yeargan called his mother Lucia Ober who testified that he made a living buying and selling jewelry and antiques.

*Assignments of Error*

**{¶10}** Yeargan raises two assignments of error,

**{¶11}** "I. THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION FOR ACQUITTAL MADE AT THE CLOSE OF THE STATES CASE.

**{¶12}** "II. THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

*Law and Analysis*

**{¶13}** Yeargan's first and second assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

**{¶14}** In his first assignment of error, Yeargan alleges that the trial court erred in not granting his Crim. R. 29 motion for acquittal. In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. See, *e.g., State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965(1995); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492(1991), *superseded by State constitutional amendment on other grounds in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668(1997). In his second assignment of error, Yeargan contends his conviction is against the manifest weight of the evidence produced by the state at trial.

**{¶15}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing

the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

{¶16} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶17} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and

a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶18} Yeargan was convicted of receiving stolen property. To find Yeargan guilty of receiving stolen property, the trier of fact would have to find that Yeargan received, retained, or disposed of the property of another, knowing or having reasonable cause to believe the property had been obtained through the commission of a theft offense. R.C. 2913.51(A). A theft offense includes "theft," which involves knowingly obtaining control over the property of another without that person's consent. R.C. 2913.02(A)(1).

{¶19} The criteria for determining whether a defendant knew or should have known that property has been stolen were set forth in *State v. Davis*, 49 Ohio App.3d 109, 550 N.E.2d 966 (8th Dist. 1988). The factors include: 1) the defendant's unexplained

possession of the merchandise; 2) the nature of the merchandise; 3) the frequency with which such merchandise is stolen; 4) the nature of the defendant's commercial activities; and 5) the relatively limited time between the theft and the recovery of the merchandise. Id. at 112, 550 N.E.2d 966. *Accord, State v. Konstantinov*, 5th Dist. Delaware No. 09-CAA-090077, 2009-Ohio-6964, ¶28-¶29.

{¶20} Knowledge that property is stolen may be inferred from circumstantial evidence, such as a defendant's unexplained possession of stolen property. *State v. Hankerson*, 70 Ohio St.2d 87, 92, 434 N.E.2d 1362 (1982).

{¶21} Ohio Revised Code Section 2901.22(B) sets forth the definition of how and when a person acts knowingly,

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶22} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Johnson,* 56 Ohio St.3d 35, 38,381 N.E.2d 637(1978) citing *State v. Huffman,* 131 Ohio St. 27, 1 N.E.2d 313(1936)*: State v. Rojas,* 64 Ohio St.3d 131, 139, 592 N.E.2d 1376(1992); *State v. Huff*, 145 Ohio App.3d 555, 563, 763

N.E.2d 695(1st Dist. 2001).  (Footnote omitted.)  Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria."  Id. citing *State v. Adams,* 4th Dist. Ross No. 94 CA 2041, 1995 WL 360247(June 8, 1995) and *State v. Paidousis*, 10th Dist. Franklin No. 00AP-118, 2001 WL 436079 (May 1, 2001).  See also, *State v. Butler,* 5th Dist. Holmes No. 2012-CA-7, 2012-Ohio-5030, ¶25.

**{¶23}**  In the case at bar, it is unrefuted that Yeargan sold items stolen from the Wise's residence to the several pawn shops close in time to when the items were believed to have been stolen. The theft from the Wise's residence occurred on October 1, 2015; on October 2, 2015 Yeargan made his first sale of the stolen property.  Yeargan's possession of the merchandise went unexplained.

**{¶24}**  One of the items Yeargan sold was a Duke University ring engraved with the name William E. Wise.  It is undisputed that Yeargan did not purchase the ring from William Wise.  The trier of fact can find purchasing a ring engraved with a name from someone who does not have that name is additional reasonable cause to believe the item is stolen in the absence of any other explanation.  Further, two defense witnesses indicated that Yeargan likely had more knowledge than the average person did when it came to the value of jewelry and watches.

**{¶25}**  If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction."  *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E. 2d 492(1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668(1997).  "Circumstantial evidence and direct evidence inherently

possess the same probative value [.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus.    Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), citing *Hurt v. Charles J. Rogers Transp. Co*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

**{¶26}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Yeargan committed the crimes of receiving stolen property. We hold, therefore, that the state met its burden of production regarding each element of the crimes of receiving stolen property and, accordingly, there was sufficient evidence to support Yeargan's convictions for receiving stolen property.

**{¶27}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest

weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

**{¶28}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶29}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967),

paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶30} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

{¶31} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Yeargan of the charges.

{¶32} Based upon the foregoing and the entire record in this matter, we find Yeargan's convictions were not against the sufficiency or the manifest weight of the

evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Yeargan's witnesses. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Yeargan's guilt.

{¶33} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of each crime beyond a reasonable doubt.

{¶34} Yeargan's first and second assignments of error are overruled.

{¶35} The judgment of the Delaware County Court of Common Pleas is affirmed.


By Gwin, J.,

Delaney, P.J., and

Hoffman, J., concur