(Slip Opinion) OCTOBER TERM, 2015 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HURST *v.* FLORIDA

### CERTIORARI TO THE SUPREME COURT OF FLORIDA

No. 14–7505.  Argued October 13, 2015—Decided January 12, 2016

Under Florida law, the maximum sentence a capital felon may receive on the basis of a conviction alone is life imprisonment.  He may be sentenced to death, but only if an additional sentencing proceeding "results in findings by the court that such person shall be punished by death."  Fla. Stat. §775.082(1).  In that proceeding, the sentencing judge first conducts an evidentiary hearing before a jury. §921.141(1).  Next, the jury, by majority vote, renders an "advisory sentence."  §921.141(2).  Notwithstanding that recommendation, the court must independently find and weigh the aggravating and mitigating circumstances before entering a sentence of life or death. §921.141(3).

A Florida jury convicted petitioner Timothy Hurst of first-degree murder for killing a co-worker and recommended the death penalty. The court sentenced Hurst to death, but he was granted a new sentencing hearing on appeal.  At resentencing, the jury again recommended death, and the judge again found the facts necessary to sentence Hurst to death.  The Florida Supreme Court affirmed, rejecting Hurst's argument that his sentence violated the Sixth Amendment in light of *Ring* v. *Arizona*, 536 U. S. 584, in which this Court found unconstitutional an Arizona capital sentencing scheme that permitted a judge rather than the jury to find the facts necessary to sentence a defendant to death.

*Held*: Florida's capital sentencing scheme violates the Sixth Amendment in light of *Ring*.  Pp. 4–10.

(a) Any fact that "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict" is an "element" that must be submitted to a jury.  *Apprendi* v. *New Jersey*, 530 U. S. 466, 494.  Applying *Apprendi* to the capital punishment context, the *Ring* Court had little difficulty concluding that an Arizona judge's inde-

pendent factfinding exposed Ring to a punishment greater than the jury's guilty verdict authorized. 536 U. S., at 604. *Ring*'s analysis applies equally here. Florida requires not the jury but a judge to make the critical findings necessary to impose the death penalty. That Florida provides an advisory jury is immaterial. See *Walton* v. *Arizona*, 497 U. S. 639, 648. As with Ring, Hurst had the maximum authorized punishment he could receive increased by a judge's own factfinding. Pp. 4–6.

(b) Florida's counterarguments are rejected. Pp. 6–10.

(1) In arguing that the jury's recommendation necessarily included an aggravating circumstance finding, Florida fails to appreciate the judge's central and singular role under Florida law, which makes the court's findings necessary to impose death and makes the jury's function advisory only. The State cannot now treat the jury's advisory recommendation as the necessary factual finding required by *Ring*. Pp. 6–7.

(2) Florida's reliance on *Blakely* v. *Washington*, 542 U. S. 296, is misplaced. There, this Court stated that under *Apprendi*, a judge may impose any sentence authorized "on the basis of the facts . . . admitted by the defendant," 542 U. S*.,* at 303. Florida alleges that Hurst's counsel admitted the existence of a robbery, but *Blakely* applied *Apprendi* to facts admitted in a guilty plea, in which the defendant necessarily waived his right to a jury trial, while Florida has not explained how Hurst's alleged admissions accomplished a similar waiver. In any event, Hurst never admitted to either aggravating circumstance alleged by the State. Pp. 7–8.

(3) That this Court upheld Florida's capital sentencing scheme in *Hildwin* v. *Florida*, 490 U. S. 638, and *Spaziano* v. *Florida*, 468 U. S. 447, does not mean that *stare decisis* compels the Court to do so here, see *Alleyne* v. *United States*, 570 U. S. ___, ___ (SOTOMAYOR, J., concurring). Time and subsequent cases have washed away the logic of *Spaziano* and *Hildwin*. Those decisions are thus overruled to the extent they allow a sentencing judge to find an aggravating circumstance, independent of a jury's factfinding, that is necessary for imposition of the death penalty. Pp. 8–9.

(4) The State's assertion that any error was harmless is not addressed here, where there is no reason to depart from the Court's normal pattern of leaving such considerations to state courts. P. 10.

147 So. 3d 435, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, THOMAS, GINSBURG, and KAGAN, JJ., joined. BREYER, J., filed an opinion concurring in the judgment. ALITO, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–7505

_____

## TIMOTHY LEE HURST, PETITIONER *v.* FLORIDA

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
FLORIDA

[January 12, 2016]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

A Florida jury convicted Timothy Lee Hurst of murder-
ing his co-worker, Cynthia Harrison. A penalty-phase jury
recommended that Hurst's judge impose a death sentence.
Notwithstanding this recommendation, Florida law re-
quired the judge to hold a separate hearing and determine
whether sufficient aggravating circumstances existed to
justify imposing the death penalty. The judge so found
and sentenced Hurst to death.

We hold this sentencing scheme unconstitutional. The
Sixth Amendment requires a jury, not a judge, to find each
fact necessary to impose a sentence of death. A jury's
mere recommendation is not enough.

I

On May 2, 1998, Cynthia Harrison's body was discov-
ered in the freezer of the restaurant where she worked—
bound, gagged, and stabbed over 60 times. The restaurant
safe was unlocked and open, missing hundreds of dollars.
The State of Florida charged Harrison's co-worker, Timo-
thy Lee Hurst, with her murder. See 819 So. 2d 689, 692–
694 (Fla. 2002).

During Hurst's 4-day trial, the State offered substantial

forensic evidence linking Hurst to the murder. Witnesses also testified that Hurst announced in advance that he planned to rob the restaurant; that Hurst and Harrison were the only people scheduled to work when Harrison was killed; and that Hurst disposed of blood-stained evidence and used stolen money to purchase shoes and rings.

Hurst responded with an alibi defense. He claimed he never made it to work because his car broke down. Hurst told police that he called the restaurant to let Harrison know he would be late. He said she sounded scared and he could hear another person—presumably the real murderer—whispering in the background.

At the close of Hurst's defense, the judge instructed the jury that it could find Hurst guilty of first-degree murder under two theories: premeditated murder or felony murder for an unlawful killing during a robbery. The jury convicted Hurst of first-degree murder but did not specify which theory it believed.

First-degree murder is a capital felony in Florida. See Fla. Stat. §782.04(1)(a) (2010). Under state law, the maximum sentence a capital felon may receive on the basis of the conviction alone is life imprisonment. §775.082(1). "A person who has been convicted of a capital felony shall be punished by death" only if an additional sentencing proceeding "results in findings by the court that such person shall be punished by death." *Ibid.* "[O]therwise such person shall be punished by life imprisonment and shall be ineligible for parole." *Ibid.*

The additional sentencing proceeding Florida employs is a "hybrid" proceeding "in which [a] jury renders an advisory verdict but the judge makes the ultimate sentencing determinations." *Ring* v. *Arizona*, 536 U. S. 584, 608, n. 6 (2002). First, the sentencing judge conducts an evidentiary hearing before a jury. Fla. Stat. §921.141(1) (2010). Next, the jury renders an "advisory sentence" of life or death without specifying the factual basis of its recom-

mendation. §921.141(2). "Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death." §921.141(3). If the court imposes death, it must "set forth in writing its findings upon which the sentence of death is based." *Ibid.* Although the judge must give the jury recommendation "great weight," *Tedder* v. *State*, 322 So. 2d 908, 910 (Fla. 1975) (*per curiam*), the sentencing order must "reflect the trial judge's independent judgment about the existence of aggravating and mitigating factors," *Blackwelder* v. *State*, 851 So. 2d 650, 653 (Fla. 2003) (*per curiam*).

Following this procedure, Hurst's jury recommended a death sentence. The judge independently agreed. See 819 So. 2d, at 694–695. On postconviction review, however, the Florida Supreme Court vacated Hurst's sentence for reasons not relevant to this case. See 18 So. 3d 975 (2009).

At resentencing in 2012, the sentencing judge conducted a new hearing during which Hurst offered mitigating evidence that he was not a "major participant" in the murder because he was at home when it happened. App. 505–507. The sentencing judge instructed the advisory jury that it could recommend a death sentence if it found at least one aggravating circumstance beyond a reasonable doubt: that the murder was especially "heinous, atrocious, or cruel" or that it occurred while Hurst was committing a robbery. *Id.*, at 211–212. The jury recommended death by a vote of 7 to 5.

The sentencing judge then sentenced Hurst to death. In her written order, the judge based the sentence in part on her independent determination that both the heinous-murder and robbery aggravators existed. *Id.*, at 261–263. She assigned "great weight" to her findings as well as to the jury's recommendation of death. *Id.*, at 271.

The Florida Supreme Court affirmed 4 to 3. 147 So. 3d 435 (2014). As relevant here, the court rejected Hurst's argument that his sentence violated the Sixth Amendment in light of *Ring*, 536 U. S. 584. *Ring*, the court recognized, "held that capital defendants are entitled to a jury determination of any fact on which the legislature conditions an increase in the maximum punishment." 147 So. 3d*,* at 445. But the court considered *Ring* inapplicable in light of this Court's repeated support of Florida's capital sentencing scheme in pre-*Ring* cases. 147 So. 3d, at 446–447 (citing *Hildwin* v. *Florida*, 490 U. S. 638 (1989) (*per curiam*)); see also *Spaziano* v. *Florida*, 468 U. S. 447, 457–465 (1984). Specifically, in *Hildwin*, this Court held that the Sixth Amendment "does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury." 490 U. S., at 640–641. The Florida court noted that we have "never expressly overruled *Hildwin*, and did not do so in *Ring*." 147 So. 3d*,* at 446–447.

Justice Pariente, joined by two colleagues, dissented from this portion of the court's opinion. She reiterated her view that "*Ring* requires any fact that qualifies a capital defendant for a sentence of death to be found by a jury." *Id.,* at 450 (opinion concurring in part and dissenting in part).

We granted certiorari to resolve whether Florida's capital sentencing scheme violates the Sixth Amendment in light of *Ring*. 575 U. S. ___ (2015). We hold that it does, and reverse.

## II

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . ." This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to a jury beyond a reasonable

doubt. *Alleyne* v. *United States*, 570 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 3). In *Apprendi* v. *New Jersey*, 530 U. S. 466, 494 (2000), this Court held that any fact that "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict" is an "element" that must be submitted to a jury. In the years since *Apprendi*, we have applied its rule to instances involving plea bargains, *Blakely* v. *Washington*, 542 U. S. 296 (2004), sentencing guidelines, *United States* v. *Booker*, 543 U. S. 220 (2005), criminal fines, *Southern Union Co.* v. *United States*, 567 U. S. \_\_\_ (2012), mandatory minimums, *Alleyne*, 570 U. S., at \_\_\_, and, in *Ring*, 536 U. S. 584, capital punishment.

In *Ring*, we concluded that Arizona's capital sentencing scheme violated *Apprendi*'s rule because the State allowed a judge to find the facts necessary to sentence a defendant to death. An Arizona jury had convicted Timothy Ring of felony murder. 536 U. S., at 591. Under state law, "Ring could not be sentenced to death, the statutory maximum penalty for first-degree murder, unless further findings were made." *Id.,* at 592. Specifically, a judge could sentence Ring to death only after independently finding at least one aggravating circumstance. *Id.,* at 592–593. Ring's judge followed this procedure, found an aggravating circumstance, and sentenced Ring to death.

The Court had little difficulty concluding that "'the required finding of an aggravated circumstance exposed Ring to a greater punishment than that authorized by the jury's guilty verdict.'" *Id.,* at 604 (quoting *Apprendi*, 530 U. S., at 494; alterations omitted). Had Ring's judge not engaged in any factfinding, Ring would have received a life sentence. *Ring*, 536 U. S., at 597. Ring's death sentence therefore violated his right to have a jury find the facts behind his punishment.

The analysis the *Ring* Court applied to Arizona's sentencing scheme applies equally to Florida's. Like Arizona at the time of *Ring*, Florida does not require the jury to

make the critical findings necessary to impose the death penalty. Rather, Florida requires a judge to find these facts. Fla. Stat. §921.141(3). Although Florida incorporates an advisory jury verdict that Arizona lacked, we have previously made clear that this distinction is immaterial: "It is true that in Florida the jury recommends a sentence, but it does not make specific factual findings with regard to the existence of mitigating or aggravating circumstances and its recommendation is not binding on the trial judge. A Florida trial court no more has the assistance of a jury's findings of fact with respect to sentencing issues than does a trial judge in Arizona." *Walton* v. *Arizona*, 497 U. S. 639, 648 (1990); accord, *State* v. *Steele*, 921 So. 2d 538, 546 (Fla. 2005) ("[T]he trial court alone must make detailed findings about the existence and weight of aggravating circumstances; it has no jury findings on which to rely").

As with Timothy Ring, the maximum punishment Timothy Hurst could have received without any judge-made findings was life in prison without parole. As with Ring, a judge increased Hurst's authorized punishment based on her own factfinding. In light of *Ring*, we hold that Hurst's sentence violates the Sixth Amendment.

### III

Without contesting *Ring*'s holding, Florida offers a bevy of arguments for why Hurst's sentence is constitutional. None holds water.

### A

Florida concedes that *Ring* required a jury to find every fact necessary to render Hurst eligible for the death penalty. But Florida argues that when Hurst's sentencing jury recommended a death sentence, it "necessarily included a finding of an aggravating circumstance." Brief for Respondent 44. The State contends that this finding quali-

fied Hurst for the death penalty under Florida law, thus satisfying *Ring*. "[T]he additional requirement that a judge *also* find an aggravator," Florida concludes, "only provides the defendant additional protection." Brief for Respondent 22.

The State fails to appreciate the central and singular role the judge plays under Florida law. As described above and by the Florida Supreme Court, the Florida sentencing statute does not make a defendant eligible for death until "findings *by the court* that such person shall be punished by death." Fla. Stat. §775.082(1) (emphasis added). The trial court *alone* must find "the facts . . . [t]hat sufficient aggravating circumstances exist" and "[t]hat there are insufficient mitigating circumstances to outweigh the aggravating circumstances." §921.141(3); see *Steele*, 921 So. 2d, at 546. "[T]he jury's function under the Florida death penalty statute is advisory only." *Spaziano* v. *State*, 433 So. 2d 508, 512 (Fla. 1983). The State cannot now treat the advisory recommendation by the jury as the necessary factual finding that *Ring* requires.

B

Florida launches its second salvo at Hurst himself, arguing that he admitted in various contexts that an aggravating circumstance existed. Even if *Ring* normally requires a jury to hear all facts necessary to sentence a defendant to death, Florida argues, "*Ring* does not require jury findings on facts defendants have admitted." Brief for Respondent 41. Florida cites our decision in *Blakely* v. *Washington*, 542 U. S. 296 (2004), in which we stated that under *Apprendi*, a judge may impose any sentence authorized "on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U. S., at 303 (emphasis deleted). In light of *Blakely*, Florida points to various instances in which Hurst's counsel allegedly admitted the existence of a robbery. Florida contends that these "ad-

missions" made Hurst eligible for the death penalty. Brief for Respondent 42–44.

*Blakely*, however, was a decision applying *Apprendi* to facts admitted in a guilty plea, in which the defendant necessarily waived his right to a jury trial. See 542 U. S., at 310–312. Florida has not explained how Hurst's alleged admissions accomplished a similar waiver. Florida's argument is also meritless on its own terms. Hurst never admitted to either aggravating circumstance alleged by the State. At most, his counsel simply refrained from challenging the aggravating circumstances in parts of his appellate briefs. See, *e.g.,* Initial Brief for Appellant in No. SC12–1947 (Fla.), p. 24 ("not challeng[ing] the trial court's findings" but arguing that death was nevertheless a disproportionate punishment).

C

The State next argues that *stare decisis* compels us to uphold Florida's capital sentencing scheme. As the Florida Supreme Court observed, this Court "repeatedly has reviewed and upheld Florida's capital sentencing statute over the past quarter of a century." *Bottoson* v. *Moore*, 833 So. 2d 693, 695 (2002) (*per curiam*) (citing *Hildwin,* 490 U. S. 638; *Spaziano*, 468 U. S. 447). "In a comparable situation," the Florida court reasoned, "the United States Supreme Court held:

> 'If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [other courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" *Bottoson*, 833 So. 2d, at 695 (quoting *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U. S. 477, 484 (1989)); see also 147 So. 3d, at 446–447 (case below).

We now expressly overrule *Spaziano* and *Hildwin* in relevant part.

*Spaziano* and *Hildwin* summarized earlier precedent to conclude that "the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury." *Hildwin*, 490 U. S*.,* at 640–641. Their conclusion was wrong, and irreconcilable with *Apprendi*. Indeed, today is not the first time we have recognized as much. In *Ring,* we held that another pre-*Apprendi* decision—*Walton*, 497 U. S. 639— could not "survive the reasoning of *Apprendi*." 536 U. S*.,* at 603. *Walton*, for its part, was a mere application of *Hildwin*'s holding to Arizona's capital sentencing scheme. 497 U. S., at 648.

"Although '"the doctrine of *stare decisis* is of fundamental importance to the rule of law[,]" . . . [o]ur precedents are not sacrosanct.' . . . '[W]e have overruled prior decisions where the necessity and propriety of doing so has been established.'" *Ring*, 536 U. S*.,* at 608 (quoting *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 172 (1989)). And in the *Apprendi* context, we have found that "*stare decisis* does not compel adherence to a decision whose 'underpinnings' have been 'eroded' by subsequent developments of constitutional law." *Alleyne*, 570 U. S., at ___ (SOTOMAYOR, J., concurring) (slip op., at 2); see also *United States* v. *Gaudin*, 515 U. S. 506, 519–520 (1995) (overruling *Sinclair* v. *United States*, 279 U. S. 263 (1929)); *Ring*, 536 U. S., at 609 (overruling *Walton*, 497 U. S., at 639); *Alleyne*, 570 U. S., at ___ (slip op., at 15) (overruling *Harris* v. *United States*, 536 U. S. 545 (2002)).

Time and subsequent cases have washed away the logic of *Spaziano* and *Hildwin*. The decisions are overruled to the extent they allow a sentencing judge to find an aggravating circumstance, independent of a jury's factfinding, that is necessary for imposition of the death penalty.

### D

Finally, we do not reach the State's assertion that any error was harmless. See *Neder* v. *United States*, 527 U. S. 1, 18–19 (1999) (holding that the failure to submit an uncontested element of an offense to a jury may be harmless). This Court normally leaves it to state courts to consider whether an error is harmless, and we see no reason to depart from that pattern here. See *Ring*, 536 U. S., at 609, n. 7.

\*     \*     \*

The Sixth Amendment protects a defendant's right to an impartial jury. This right required Florida to base Timothy Hurst's death sentence on a jury's verdict, not a judge's factfinding. Florida's sentencing scheme, which required the judge alone to find the existence of an aggravating circumstance, is therefore unconstitutional.

The judgment of the Florida Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–7505

_____

## TIMOTHY LEE HURST, PETITIONER *v.* FLORIDA

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
FLORIDA

[January 12, 2016]

JUSTICE BREYER, concurring in the judgment.

For the reasons explained in my opinion concurring in the judgment in *Ring* v. *Arizona*, 536 U. S. 584, 613–619 (2002), I cannot join the Court's opinion. As in that case, however, I concur in the judgment here based on my view that "the Eighth Amendment requires that a jury, not a judge, make the decision to sentence a defendant to death." *Id.,* at 614; see *id.,* at 618 ("[T]he danger of unwarranted imposition of the [death] penalty cannot be avoided unless 'the decision to impose the death penalty is made by a jury rather than by a single government official'" (quoting *Spaziano* v. *Florida*, 468 U. S. 447, 469 (1984) (Stevens, J., concurring in part and dissenting in part))). No one argues that Florida's juries actually sentence capital defendants to death—that job is left to Florida's judges. See Fla. Stat. §921.141(3) (2010). Like the majority, therefore, I would reverse the judgment of the Florida Supreme Court.

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–7505

_____

## TIMOTHY LEE HURST, PETITIONER *v.* FLORIDA

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
FLORIDA

[January 12, 2016]

JUSTICE ALITO, dissenting.

As the Court acknowledges, "this Court 'repeatedly has reviewed and upheld Florida's capital sentencing statute over the past quarter of a century.'" *Ante*, at 8. And as the Court also concedes, our precedents hold that "'the Sixth Amendment *does not* require that the specific findings authorizing the imposition of the sentence of death be made by the jury.'" *Ante*, at 9 (quoting *Hildwin* v. *Florida*, 490 U. S. 638, 640–641 (1989) (*per curiam*); emphasis added); see also *Spaziano* v. *Florida*, 468 U. S. 447, 460 (1984). The Court now reverses course, striking down Florida's capital sentencing system, overruling our decisions in *Hildwin* and *Spaziano*, and holding that the Sixth Amendment *does* require that the specific findings authorizing a sentence of death be made by a jury. I disagree.

I

First, I would not overrule *Hildwin* and *Spaziano* without reconsidering the cases on which the Court's present decision is based. The Court relies on later cases holding that any fact that exposes a defendant to a greater punishment than that authorized by the jury's guilty verdict is an element of the offense that must be submitted to a jury. *Ante*, at 5. But there are strong reasons to question whether this principle is consistent with the original understanding of the jury trial right. See *Alleyne* v. *United*

*States*, 570 U. S. ___, ___–___ (2013) (ALITO, J., dissenting) (slip op., at 1–2). Before overruling *Hildwin* and *Spaziano*, I would reconsider the cases, including most prominently *Ring* v. *Arizona*, 536 U. S. 584 (2002), on which the Court now relies.

Second, even if *Ring* is assumed to be correct, I would not extend it. Although the Court suggests that today's holding follows ineluctably from *Ring*, the Arizona sentencing scheme at issue in that case was much different from the Florida procedure now before us. In *Ring*, the jury found the defendant guilty of felony murder and did no more. It did not make the findings required by the Eighth Amendment before the death penalty may be imposed in a felony-murder case. See *id.*, at 591–592, 594; *Enmund* v. *Florida*, 458 U. S. 782 (1982); *Tison* v. *Arizona*, 481 U. S. 137 (1987). Nor did the jury find the presence of any aggravating factor, as required for death eligibility under Arizona law. *Ring*, *supra*, at 592–593. Nor did it consider mitigating factors. And it did not determine whether a capital or noncapital sentence was appropriate. Under that system, the jury played *no* role in the capital sentencing process.

The Florida system is quite different. In Florida, the jury sits as the initial and primary adjudicator of the factors bearing on the death penalty. After unanimously determining guilt at trial, a Florida jury hears evidence of aggravating and mitigating circumstances. See Fla. Stat. §921.141(1) (2010). At the conclusion of this separate sentencing hearing, the jury may recommend a death sentence only if it finds that the State has proved one or more aggravating factors beyond a reasonable doubt and only after weighing the aggravating and mitigating factors. §921.141(2).

Once the jury has made this decision, the trial court performs what amounts, in practical terms, to a reviewing function. The judge duplicates the steps previously per-

formed by the jury and, while the court can impose a sentence different from that recommended by the jury, the judge must accord the jury's recommendation "great weight." See *Lambrix* v. *Singletary*, 520 U. S. 518, 525–526 (1997) (recounting Florida law and procedure). Indeed, if the jury recommends a life sentence, the judge may override that decision only if "the facts suggesting a sentence of death were so clear and convincing that virtually no reasonable person could differ." *Tedder* v. *State*, 322 So. 2d 908, 910 (Fla. 1975) (*per curiam*). No Florida trial court has overruled a jury's recommendation of a life sentence for more than 15 years.

Under the Florida system, the jury plays a critically important role. Our decision in *Ring* did not decide whether this procedure violates the Sixth Amendment, and I would not extend *Ring* to cover the Florida system.

II

Finally, even if there was a constitutional violation in this case, I would hold that the error was harmless beyond a reasonable doubt. See *Chapman* v. *California*, 386 U. S. 18, 24 (1967). Although petitioner attacks the Florida system on numerous grounds, the Court's decision is based on a single perceived defect, *i.e.*, that the jury's determination that at least one aggravating factor was proved is not binding on the trial judge. *Ante,* at 6. The Court makes no pretense that this supposed defect could have prejudiced petitioner, and it seems very clear that it did not.

Attempting to show that he might have been prejudiced by the error, petitioner suggests that the jury might not have found the existence of an aggravating factor had it been instructed that its finding was a prerequisite for the imposition of the death penalty, but this suggestion is hard to credit. The jury was told to consider two aggravating factors: that the murder was committed during the course of a robbery and that it was especially "heinous,

atrocious, or cruel." App. 212. The evidence in support of both factors was overwhelming.

The evidence with regard to the first aggravating factor—that the murder occurred during the commission of a robbery—was as follows. The victim, Cynthia Harrison, an assistant manager of a Popeye's restaurant, arrived at work between 7 a.m. and 8:30 a.m. on the date of her death. When other employees entered the store at about 10:30 a.m., they found that she had been stabbed to death and that the restaurant's safe was open and the previous day's receipts were missing. At trial, the issue was whether Hurst committed the murder. There was no suggestion that the murder did not occur during the robbery. Any alternative scenario—for example, that Cynthia Harrison was first murdered by one person for some reason other than robbery and that a second person came upon the scene shortly after the murder and somehow gained access to and emptied the Popeye's safe—is fanciful.

The evidence concerning the second aggravating factor—that the murder was especially "heinous, atrocious, or cruel"—was also overwhelming. Cynthia Harrison was bound, gagged, and stabbed more than 60 times. Her injuries included "facial cuts that went all the way down to the underlying bone," "cuts through the eyelid region" and "the top of her lip," and "a large cut to her neck which almost severed her trachea." *Id.*, at 261. It was estimated that death could have taken as long as 15 minutes to occur. The trial court characterized the manner of her death as follows: "The utter terror and pain that Ms. Harrison likely experienced during the incident is unfathomable. Words are inadequate to describe this death, but the photographs introduced as evidence depict a person bound, rendered helpless, and brutally, savagely, and unmercifully slashed and disfigured. The murder of Ms. Harrison was conscienceless, pitiless, and unnecessarily

torturous." *Id.,* at 261–262.

In light of this evidence, it defies belief to suggest that the jury would not have found the existence of either aggravating factor if its finding was binding. More than 17 years have passed since Cynthia Harrison was brutally murdered. In the interest of bringing this protracted litigation to a close, I would rule on the issue of harmless error and would affirm the decision of the Florida Supreme Court.