[Cite as *State v. Godsey*, 2020-Ohio-4223.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                    |
|--------------------------|---|----------------------------|
| STATE OF OHIO            | : | Hon. W. Scott Gwin, P.J.   |
|                          | : | Hon. John W. Wise, J.      |
| Plaintiff-Appellee       | : | Hon. Earle E. Wise, J.     |
|                          | : |                            |
| -vs-                     | : |                            |
|                          | : | Case No. 20-COA-008        |
| ISSAC GODSEY             | : |                            |
|                          | : |                            |
| Defendant-Appellant      | : | OPINION                    |

CHARACTER OF PROCEEDING: Criminal appeal from the Ashland County Court of Common Pleas, Case No. 19-CRI-209

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: August 27, 2020

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER R. TUNNELL
Ashland County Prosecuting Attorney
VICTOR R. PEREZ
Assistant Prosecuting Attorney
110 Cottage Street
Ashland, OH 44805

For Defendant-Appellant

BRIAN SMITH
755 White Pond Drive, Ste. 403
Akron, OH 44320

*Gwin, P.J.*

{¶1} Defendant-appellant Issac Godsey ["Godsey"] appeals his convictions and sentences after a jury trial in the Ashland County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On September 20, 2019, Neil Burdick was visiting his son and his family in Miamisburg, Montgomery County, Ohio. Miamisburg is just south of Dayton, Ohio. Mr. Burdick drove from Pennsylvania with his daughter in his 1997 grey Jeep Grand Cherokee. Mr. Burdick checked in at the Studio 6 across from the Dayton Mall on that day between 3:30 pm and 4:00 pm. Mr. Burdick's daughter stayed with his son. The license plate to Mr. Burdick's Jeep Cherokee was Pennsylvania plate number "FVE 2250." The license plate was attached to the Jeep when Mr. Burdick checked in to the Studio 6 Motel. Mr. Burdick backed into a parking spot. After checking in, Mr. Burdick visited with his son and his family. Mr. Burdick returned to the Studio 6 Motel and parked in the same manner. The next day Mr. Burdick visited with his son and his family again. When he returned to Studio 6 Motel, he pulled into a parking spot nose first and noticed that his license plate was missing. Mr. Burdick walked to where he had previously parked and did not find the license plate. Mr. Burdick went into the lobby, contacted the clerk and called 911.

{¶3} Officer Brian Brenneman from the Miami Township Police Department responded to the Studio 6 Motel. Mr. Burdick filed a stolen license plate police report with Officer Brenneman. Mr. Burdick returned to Pennsylvania on Sunday, September 22, 2019. Mr. Burdick did not know Godsey and did not give anyone permission to take the license plate from his Jeep Cherokee.

{¶4} Officer Brenneman entered Pennsylvania license plate number "FVE 2250" as stolen into LEADS. Officer Brenneman met with the owner of the Studio 6 Motel and reviewed the motel's security video footage for the period that Mr. Burdick was a registered guest of the motel. Officer Brenneman did not see anything of consequence during the period when the license plate was reported stolen. He then reviewed the motel's security video from the night before. At about 3:30 a.m. on the video, Officer Brenneman observed a similar Jeep to Mr. Burdick's Jeep pull in next to Mr. Burdick's Jeep. Officer Brenneman observed a man get out of the other Jeep and walk off towards a nearby Speedway gas station. Officer Brenneman then observed the same man come back to the area behind Mr. Burdick's Jeep and, after a few minutes being behind Mr. Burdick's Jeep, the male got back into the other Jeep. Officer Brenneman noticed that the other Jeep that parked next to Mr. Burdick's Jeep on September 21, 2019 was very similar to Mr. Burdick's Jeep. Officer Brenneman noticed that the other Jeep was lifted and had larger tires. Officer Brenneman was also able to see how the other Jeep pulled out of the parking spot next to Mr. Burdick and drove away from the area. Officer Brenneman then observed that the other Jeep Cherokee pulled into another parking spot, the male got out of the vehicle, and the male went to the back of the vehicle. Officer Brenneman then observed the other Jeep Cherokee leave the parking lot. Officer Brenneman did not see the other person remove the license plate from Mr. Burdick's Jeep. The license plate is not seen in the possession of the other driver or attached to his Jeep in the video footage.

{¶5} On September 21, 2019, Ms. Jasia Rivers accompanied her partner Don Williams from Columbus to the Cleveland area to buy a customized car. The couple

rented a car to make the trip to Cleveland. After picking up the car, Ms. Rivers drove the rental car while Mr. Williams drove the car on their return trip to Columbus via I-71. Ms. Rivers noticed that Mr. Williams started having problems with the car. Mr. Williams pulled over to try to fix it. Not being able to fix the car, they decided to secure the car, leave it on the roadside of I-71, and return the next day with a car hauler to take the broken down car to Columbus. Before they returned to Columbus, an unidentified officer stopped by to assist them and told them that it was o.k. to leave the car there for a day.

{¶6} On September 22, 2019, Mr. Williams and Ms. Rivers rented a truck with a car hauler and returned to where they had left the car. As they were traveling northbound on I-71 Ms. Rivers saw that the passenger door to the car was up and open. Ms. Rivers also saw an SUV in front of the car. Ms. Rivers called 911. Mr. Williams drove to the next highway break on I-71 turned around and started driving southbound on I-71. Mr. Williams pulled up in front of the SUV and the car and parked on the roadside of I-71. Ms. Rivers jumped out of the rental truck and saw that someone was still inside of the car. Ms. Rivers could still see legs hanging out of the passenger side of the car. Ms. Rivers saw two women in the SUV and they started yelling. Ms. Rivers started running towards the car so she could slow down the person in the car. As she was running towards the car, Ms. Rivers saw Godsey had the car's expensive after-market car radio in his hands. Ms. Rivers ran towards the back of the SUV and the car to stop Godsey from stealing the radio and he pushed her out of the way. On cross-examination, Ms. Rivers testified that Godsey "stiff-armed" her when he pushed her out of the way. Ms. Rivers tried to punch Godsey to slow him down. After pushing Ms. Rivers out of the way, Godsey ran towards the SUV's driver's side. Godsey then started tussling with Mr.

Williams over the radio.  Ms. Rivers was still on the phone with 911 and was giving the call taker a description of what was happening.  Ms. Rivers then opened the front passenger door to the SUV and tried to take the keys out of the ignition of the SUV to stop Godsey and his companions from attempting to leave.  However, Godsey was able to get inside of the SUV and drove off after fighting off Mr. Williams.  Ms. Rivers gave 911 the license plate number on the SUV, Pennsylvania plate number "FVE 2250."  Ms. Rivers received a bruise to her arm and scars to her hand during the altercation.  Ms. Rivers had never met Godsey before that day and did not give him permission to take the radio out of the car.

{¶7}    On September 21, 2019, after renting a truck and a car hauler, Mr. Williams was driving Northbound on I-71 when Ms. Rivers saw that the 1987 Chevy Caprice's passenger door was open.  Ms. Rivers also told Mr. Williams that someone was inside of the car, and that there was a Jeep in front of the car.  Ms. Rivers called 911 as Mr. Williams was concentrating on driving and looking for the closest turn around.  Mr. Williams did not recognize the Jeep stopped in front of the car and had never seen it before.  Mr. Williams got out of the rented truck and saw that Godsey was out of the car.  Mr. Williams heard the women in the Jeep screaming for Godsey to get back in the Jeep.  Mr. Williams saw that Godsey had in his hands the radio taken from Mr. Williams's broken-down car.  Mr. Williams saw Godsey put a move on Ms. Rivers.  Mr. Williams intercepted Godsey by the Jeep's driver's side door.  Mr. Williams tried to take the radio back from Godsey.  Godsey tussled with Mr. Williams for the radio.  During the struggle Godsey was able to get inside of the Jeep; however, he continued to fight with Mr. Williams.  Mr. Williams was trying to stop Godsey from leaving the scene; however, Godsey was able to drive off in the Jeep.

Mr. Williams hurt his ribs and received scratches to his hands during the scuffle for the radio when Godsey kicked and threw punches at him.

{¶8} Trooper Richard Pollard from the Ohio State Highway Patrol was working on Saturday, September 21, 2019 when he came across a customized 1987 Chevy Caprice at the shoulder of Southbound I-71 near milepost 194 in Ashland County. The car appeared to be disabled and abandoned. Trooper Pollard put a 48-hour removal tag on the 1987 Chevy Caprice and continued with his shift. While he was having lunch with other Ohio State Highway Patrol Officers, Trooper Pollard received a call for a theft/physical altercation around 194 milepost. Dispatch provided the description of the vehicle as a tan or brown Jeep Cherokee with Pennsylvania plate "FVE 2250." Dispatch also informed them that a black male, who was later identified as Godsey, was driving the Jeep Cherokee. The Troopers attempted to stop the Jeep Cherokee but Godsey continued driving southbound on I-71. During the chase, Trooper Pollard observed the Pennsylvania license plate "FVE 2250" on the Jeep. Dispatch informed the Troopers involved in the chase that the license plate on the Jeep Cherokee had been reported stolen.

{¶9} Godsey eventually stopped the Jeep Cherokee and the Troopers proceeded to conduct a felony stop. After Godsey was taken into custody, he was advised of his rights. Godsey told Trooper Pollard that he was driving southbound on I-71 when he saw the 1987 Chevy Caprice on the side of the road and believed that it belonged to someone that he knew. Godsey stopped to check on the car and was jumped by other people. During the video playback of the felony traffic stop Godsey told Trooper Pollard that he had "found the license plate" but that he knew that it went to a Jeep.

{¶10} On October 10, 2019, the Ashland County Grand Jury returned a three-count indicted against Godsey. Godsey was charged with Robbery, a second-degree felony in violation of R.C. 2911.02(A)(2); Robbery, a third-degree felony in violation of R.C. 2911.02(A)(3); and Receiving Stolen Property, a fifth-degree felony in violation of R.C. 2913.51(A).

{¶11} The case proceeded to a trial by jury on December 10, 2019. On December 11, 2019, the jury found Godsey guilty of all counts. On January 6, 2020, following a sentencing hearing, the trial court sentenced Godsey to an indefinite sentence of 6 to 9 years in prison on Count One; 24 months in prison on Count Two; and 9 months in prison on Count Three. The trial court ordered that the sentences on Counts Two and Three be served concurrently to Godsey's sentence on Count One. The trial court credited Godsey with 106 days served, and ordered that Godsey's supervision on post-release control be revoked and that 789 days of Godsey's prior, suspended prison sentence be re-imposed.

*Assignments of Error*

{¶12} Godsey raises three Assignments of Error,

{¶13} "I. APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶14} "II. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} "III. THE TRIAL COURT'S DECISION NOT TO GIVE THE JURY AN INSTRUCTION ON ATTEMPTED THEFT, OR THEFT, ON COUNT TWO OF THE INDICTMENT WAS AN ABUSE OF DISCRETION."

I. & II.

I.

{¶16}  In his First Assignment of Error, Godsey argues that there was insufficient evidence to support his convictions.  In his Second Assignment of Error, Godsey contends his convictions are against the manifest weight of the evidence.

**1.1. Standard of Appellate Review– Sufficiency of the Evidence.**

{¶17}  The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).   The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.  "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶18}  When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997*; *Walker*, at ¶30.  "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at

paragraph two of the syllabus.  *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19.  Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, 'if believed, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* at ¶31.  We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'"  *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**1.1.1 Issue for Appeal**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Godsey's guilt on each element of the crimes for which he was convicted beyond a reasonable doubt.*

**1.1.2 Count 1 – Robbery - Inflict, attempt to inflict, or threaten to inflict physical harm on Donald Williams and/ or Jasia Rivers.**

{¶19}  To find Godsey guilty of Robbery as alleged in Count I of the indictment, the jury would have to find beyond a reasonable doubt that Godsey, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense inflicted, attempted to inflict, or threaten to inflict physical harm on Donald Williams and/or Jasia Rivers.  R.C. 2911.02(A)(2); 2T. at 272[1].  R.C. 2901.01 states, in relevant part, "'Physical

---

[1] For clarity, references to Godsey's jury trial will be referred to as "__T.__," signifying the volume and the page number.

harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶20}  In the case at bar, the evidence established that Godsey did not have an ownership or possessory interest in the broken down car or the radio contained inside the car.  Nor did Godsey have consent of the owner or person authorized to give consent to remove the radio from the broken down car owned by Williams and his partner Rivers.  *See*, R.C. 2913.02.

{¶21}  Godsey was inside the car when Williams and Rivers first saw him.  1T. at 144; 146.  Rivers immediately called 911.  Godsey pushed Rivers out of his way as he clutched the radio he had removed from the car.  1T. at 148; 157.  Rivers remained on the telephone with 911.  1T. at 151. As Rivers reached inside Godsey's SUV in an attempt to take the keys from the ignition, Godsey was pushing her off and swinging "my way to keep my arm from getting across."  1T. at 154.  Rivers received scars on her hand and bruises on her arm.  1T. at 154.

{¶22}  Williams testified that he was half inside Godsey's vehicle and Godsey was fighting him in an attempt to flee the scene.  1T. at 166.  Godsey started the vehicle and began to drive away and Williams testified that he was either kicked or struck by the vehicle.  1T. at 166-168; 179.  Godsey was also throwing punches at Williams.  Williams received scratches on his knuckles and sore ribs.  1T. at 168; 179.

{¶23} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Godsey in attempting or committing a theft offense or in fleeing immediately after the attempt or offense inflicted, attempted to inflict, or threaten to inflict physical harm on

Donald Williams and/or Jasia Rivers. We hold, therefore, that the state met its burden of production regarding the element of Robbery and, accordingly, there was sufficient evidence to support Godsey's conviction.

**1.1.3. Count 2 – Robbery-use of force or threatened the use of force against Donald Williams.**

{¶24} To find Godsey guilty of Robbery as alleged in Count II of the indictment, the jury would have to find beyond a reasonable doubt that Godsey, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense Godsey used force or threatened the use of force against Donald Williams. R.C. 2911.02(A)(3). 2T. at 279. R.C. 2901.01 states, in relevant part, "force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

{¶25} Godsey took the radio from Williams's car without permission. 1T. at 164. Godsey tussled with Williams while clutching the radio and attempting to make his escape. 1T. at 165. Williams testified that he was half inside Godsey's vehicle and Godsey was fighting him in an attempt to flee the scene. 1T. at 166. Godsey started the vehicle and began to drive away and Williams testified that he was either kicked or stuck by the vehicle. 1T. at 166-168; 179. Godsey was also throwing punches at Williams. Williams received scratches on his knuckles and sore ribs. 1T. at 168; 179.

{¶26} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Godsey in attempting or committing a theft offense or in fleeing immediately after the attempt or offense used force or threatened the use of force against Donald Williams. We

hold, therefore, that the state met its burden of production regarding the element of Robbery and, accordingly, there was sufficient evidence to support Godsey's conviction.

**1.1.4. Count 3 – Receiving stolen property –Pennsylvania License Plate Number FVE 2250.**

{¶27} To find Godsey guilty of receiving stolen property, the trier of fact would have had to find that Godsey received, retained, or disposed of the property of another, knowing or having reasonable cause to believe the property had been obtained through the commission of a theft offense. R.C. 2913.51(A). A theft offense includes "theft," which involves knowingly obtaining control over the property of another without that person's consent. R.C. 2913.02(A)(1).

{¶28} The criteria for determining whether a defendant knew or should have known that property has been stolen were set forth in *State v. Davis*, 49 Ohio App.3d 109, 550 N.E.2d 966(8th Dist. 1988); *State v. Yeargan,* 5th Dist. Delaware No. 16CAA060028, 2017-Ohio-1325, ¶19. The factors include: 1) the defendant's unexplained possession of the merchandise; 2) the nature of the merchandise; 3) the frequency with which such merchandise is stolen; 4) the nature of the defendant's commercial activities; and 5) the relatively limited time between the theft and the recovery of the merchandise. Id. at 112, 550 N.E.2d 966; *Yeargan,* ¶19. Knowledge that property is stolen may be inferred from circumstantial evidence, such as a defendant's unexplained possession of stolen property. *State v. Hankerson*, 70 Ohio St.2d 87, 92, 434 N.E.2d 1362 (1982). R.C. 2901.22(B) sets forth the definition of how and when a person acts knowingly,

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will

probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶29} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Johnson*, 56 Ohio St.3d 35, 38,381 N.E.2d 637(1978) *citing State v. Huffman,* 131 Ohio St. 27, 1 N.E.2d 313(1936): *State v. Rojas*, 64 Ohio St.3d 131, 139, 592 N.E.2d 1376(1992); *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695(1st Dist. 2001). (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." Id. *citing State v. Adams*, 4th Dist. Ross No. 94 CA 2041, 1995 WL 360247(June 8, 1995) and *State v. Paidousis*, 10th Dist. Franklin No. 00AP–118, 2001 WL 436079 (May 1, 2001). *See also, State v. Butler*, 5th Dist. Holmes No. 2012–CA–7, 2012–Ohio–5030, ¶ 25.

{¶30} In this case, Mr. Burdick did not give permission to Godsey to retain Mr. Burdick's stolen license plate. When questioned by Trooper Pollard about the stolen license plate Godsey responded that "he found the license plate" but he also knew that it went to a Jeep. Accordingly, there is an inference that Godsey could not know that the Pennsylvania license plate on the Jeep that he was driving belonged to another Jeep if he just found it laying alongside the road or in a parking lot. Further, the video surveillance

footage shows an SUV similar to Godsey's is parking next to Mr. Burdick's Jeep. The male driver exited that vehicle and acted suspiciously at the back of Mr. Burdick's Jeep.

{¶31} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E. 2d 492(1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668(1997). "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" Jenks, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks,* 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), *citing Hurt v. Charles J. Rogers Transp. Co,* 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case*. Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, *citing Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

{¶32} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Godsey committed the crimes of receiving stolen property. We hold, therefore, that the state met its burden of production regarding each element of the crimes of receiving stolen

property and, accordingly, there was sufficient evidence to support Godsey's convictions for receiving stolen property.

**1.2. Standard of Appellate Review – Manifest Weight.**

{¶33} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; State v. Issa, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶34} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31.

Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶35} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**1.2.1. Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

{¶36} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of

fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶37} In the case at bar, the jury heard the witnesses and viewed the evidence. The jury saw and heard Williams, Rivers, and Burdick subject to cross-examination. The jury heard Godsey's attorney's arguments and explanations about the evidence and his actions. The trial judge instructed the jury on the lesser offense of Theft in relation to Count I of the Indictment finding that the jury could find from the evidence that the state failed to prove that Godsey inflicted, attempted to inflict, or threatened to inflict physical harm on Donald Williams and/or Jasia Rivers. 2T. at 239-240; 278. Thus, a rational basis exists in the record for the jury's decision.

{¶38} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Godsey's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Godsey's guilt. The jury neither lost his way nor created a miscarriage of justice in convicting Godsey of the offenses.

{¶39} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Godsey was convicted.

{¶40} Godsey's First and Second Assignments of Error are overruled.

III.

{¶41} In his Third Assignment of Error, Godsey contends that the trial judge abused his discretion by failing to instruct the jury on the lesser-included offense of theft on Count II of the Indictment.

**3.1 STANDARD OF APPELLATE REVIEW.**

{¶42} We review a trial court's refusal to provide a requested jury instruction for an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). Generally, "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh evidence and discharge its duty as the fact

finder." *State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus.

**{¶43}** "Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. In making this determination, the court must view the evidence in a light most favorable to defendant. *State v. Smith*, 89 Ohio St.3d 323, 331, 731 N.E.2d 645(2000); *State v. Wilkins*, 64 Ohio St.2d 382, 388, 415 N.E.2d 303(1980). Nevertheless, an instruction is not warranted every time any evidence is presented on a lesser-included offense. There must be "sufficient evidence" to "allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense." *State v. Shane*, 63 Ohio St.3d at 632-633, 590 N.E.2d 272; *State v. Conway*, 108 Ohio St.3d at 240,842 N.E.2d at 1027, 2006-Ohio-791 at ¶ 134. The Ohio Supreme Court has cautioned,

> Past decisions of this court have sometimes given the erroneous impression that, whenever there is "some evidence" that a defendant in a murder prosecution may have acted in such a way as to satisfy the requirements of the voluntary manslaughter statute, an instruction on the inferior-degree offense of voluntary manslaughter must always be given. See, *e.g., State v. Muscatello* (1978), 55 Ohio St.2d 201, 9 O.O.3d 148, 378 N.E.2d 738, paragraph four of the syllabus. See, also, *Tyler, supra,* 50 Ohio St.3d at 37, 553 N.E.2d at 592. That clearly never has been the law in this

state, nor is it the law today. The "some evidence" referred to in those cases is simply an abbreviated way of saying that a jury instruction must be given on a lesser included (or inferior-degree) offense when sufficient evidence is presented which would allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense.

To require an instruction to be given to the jury every time "some evidence," however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense. Trial judges are frequently required to decide what lesser-included (or inferior-degree) offenses must go to the jury and which must not. The jury would be unduly confused if it had to consider the option of guilty on a lesser included (or inferior-degree) offense when it could not reasonably return such a verdict.

*State v. Shane*, 63 Ohio St.3d at 632-633, 590 N.E.2d 272 (emphasis in original).

{¶44} In our disposition of Godsey's First and Second Assignments of Error we found that there was sufficient evidence that Godsey used force or threatened the use of force against Donald Williams in violation of R.C. 2911.02(A)(3). Accordingly, to be entitled to a jury instruction on the lesser offense of Theft, the record must contain sufficient evidence which would allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense.

{¶45} There is no question that Godsey committed a theft offense when he stole the radio from Williams's car. The question is therefore, whether the record contains sufficient evidence for a jury to reasonably reject the greater offense by finding that Godsey did not use force or threatened the use of force against Donald Williams in attempting or committing a theft offense or in fleeing immediately after the attempt or offense.

{¶46} "Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. R.C. 2901.01(A)(1). In the case at bar, evidence was presented that Godsey took the radio from Williams's car without permission. 1T. at 164. Godsey tussled with Williams while clutching the radio and attempting to make his escape. 1T. at 165. Godsey presented no evidence to controvert the fact that he did not have a right to remove the radio from Williams's car. Godsey did not present any evidence to controvert the testimony of Williams that Godsey struggled to maintain control of the radio and to prevent Williams from obtaining the radio as Godsey tried to make his escape.

{¶47} Under these particular facts and circumstances we cannot find that the trial court abused its discretion in determining that there was not sufficient evidence for a jury to reasonably reject the greater offense, in this instance robbery pursuant to R.C. 2911.02(A)(3), and find Godsey guilty of the lesser offense of theft pursuant to R.C. 2913.02.

{¶48} Godsey's Third Assignment of Error is overruled.

{¶49}   The judgment of the Ashland County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Wise, John, J., and

Wise, Earle, J., concur